IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| C3 INVESTMENTS OF NORTH CAROLINA, INC., | ) ) ) | |
| Plaintiff, | ) ) | No. 2:19-cv-2609-DCN |
| vs. | ) ) ) | **ORDER** |
| IRONSHORE SPECIALTY INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) ) | |

This matter is before the court on defendant Ironshore Specialty Insurance Company's ("Ironshore") motion to dismiss or, in the alternative, to transfer venue, ECF No. 6. For the reasons set forth below, the court denies the motion.

## I. BACKGROUND

This insurance dispute arises from a commercial property insurance policy (the "Ironshore Policy") between an insured, plaintiff C3 Investments of North Carolina, Inc. ("C3NC"), and its insurer, Ironshore. C3NC owns and operates a hotel located in Southport, North Carolina, which suffered significant damage at the hands of Hurricane Florence when the storm made landfall in September of 2018, during the Ironshore Policy period. C3NC filed this action on September 16, 2019, alleging that Ironshore failed to meet its obligations under the Ironshore Policy. ECF No. 1. On November 11, 2019, Ironshore filed the instant motion to dismiss or, in the alternative, to transfer venue. ECF No. 6. C3NC filed a response to the motion on December 9, 2019, ECF No. 9, to which Ironshore replied on December 13, 2019, ECF No. 11. The issue has been fully briefed, and the motion is ripe for the court's review.

1

## II. STANDARD

### A. Motion to Dismiss for Lack of Personal Jurisdiction

When the defendant challenges personal jurisdiction, the plaintiff has the burden of showing that jurisdiction exists. See In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997). When the court decides a personal jurisdiction challenge without an evidentiary hearing, the plaintiff must prove a prima facie case of personal jurisdiction. See Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). "In considering the challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." In re Celotex Corp., 124 F.3d at 628 (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). However, the court need not "credit conclusory allegations or draw farfetched inferences." Masselli & Lane, PC v. Miller & Schuh, PA, 2000 WL 691100, at *1 (4th Cir. May 30, 2000) (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)).

### B. Motion to Transfer Venue

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought or to any district . . . to which all parties have consented." 28 U.S.C. § 1404(a). The burden is on the moving party to show by a preponderance of the evidence "that transfer to another forum is proper." State Farm Fire & Cas. Co. v. Blanton, 2014 WL 7146980, at *2 (D.S.C. Dec. 15, 2014) (citations omitted). The decision to transfer a case to another venue is "committed to the discretion of the district court[,]" In re Ralston Purina Co., 726 F.2d 1002, 1005 (4th Cir. 1984) (citations omitted), requiring the court to

undertake "an individualized, case-by-case consideration of convenience and fairness" and "to weigh in the balance a number of case-specific factors." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (citation omitted). The factors "commonly considered" are:

> (1) the ease of access to the sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of the witnesses; (4) the availability of compulsory process; (5) the possibility of a view by the jury; (6) the interest in having local controversies decided at home; and (7) the interests of justice.

Atkins v. Mortara Instrument, Inc., 2017 WL 10754250, at *2 (D.S.C. Sept. 29, 2017).

### III. DISCUSSION

In its motion, Ironshore argues that the court does not have personal jurisdiction over it, and thus requests dismissal under Fed. R. Civ. P. 12(b)(2). Additionally, Ironshore argues that South Carolina is not a proper venue and thus alternatively requests a transfer of the matter to the Eastern District of North Carolina. The court finds that Ironshore has waived its right to contest personal jurisdiction and that a transfer of venue is not appropriate. Therefore, the court denies the motion.

**A. Personal Jurisdiction**

C3NC's complaint alleges that the court has personal jurisdiction over Ironshore "by virtue of Ironshore's contractually agreed forum selection clause." ECF No. 1, Compl. ¶ 2. C3NC did not plead any other ground for personal jurisdiction and has not argued any other ground in relation to the instant motion; instead, C3NC sole argument is that Ironshore waived its ability to contest personal jurisdiction based on the language of the Ironshore Policy. The court agrees.

This motion presents an interesting legal issue at the intersection of state and federal law. To resolve the motion, the court must determine the nature of the policy provision at issue through state-law principles of contract interpretation, and then the court must determine whether Ironshore validly waived its constitutionally derived right to contest personal jurisdiction by assenting to that provision, which requires the application of federal law.

First, the court clarifies the nature of the Ironshore Policy provision at issue. Both parties refer to the clause as a "forum selection clause", and each party cites to law that governs the enforceability of forum-selection clauses. The parties are correct that federal law generally governs the enforceability of a forum-selection clause. See Scott v. Guardsmark Sec., 874 F. Supp. 117, 120 (D.S.C. 1995) (citing Stewart Org. v. Ricoh Corp., 487 U.S. 22 (1988)). But before this court considers the enforceability of the so-called forum-selection clause, it must first determine whether the provision is a forum-selection clause at all. Because contract interpretation is a matter of state law, the court must employ the proper state's law, according to choice-of-law-rules, to determine the nature of the provision at issue.

C3NC has alleged that the court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332. In a diversity case, the court must apply the choice of law rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). South Carolina adheres to common law choice of law rules. Where a contract's formation, interpretation, or validity is at issue, South Carolina courts apply the substantive law of the place where the contract at issue was formed. O'Briant v. Daniel Constr. Co., 305 S.E.2d 241, 243 (S.C. 1983). Where performance is at issue, the law of

the place of performance governs. Livingston v. Atlantic Coast Line R.R. Co., 180 S.E. 343, 345 (S.C. 1935). Since the applicability of the policy provision at issue is a matter of contract interpretation, the court will apply the substantive law of the state in which the contract was formed. Here, that state is North Carolina.

Under North Carolina law, "an insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." Fid. Bankers Life Ins. Co. v. Dortch, 348 S.E.2d 794, 796 (N.C. 1986). Further, "the intention of the parties controls any interpretation or construction of the contract, and intention must be derived from the language employed." Id. (citing Lineberry v. Trust Co., 77 S.E.2d 652 (N.C. 1953)). North Carolina has "long recognized [a court's] duty to construe and enforce insurance policies as written, without rewriting the contract or disregarding the express language used." Id. (citing Industrial Center v. Liability Co., 155 S.E.2d 501 (N.C. 1967)). Only where an insurance contract "is ambiguous does strict construction [against the insurer] become appropriate." Id. (citing Duke v. Insurance Co., 210 S.E.2d 187 (N.C. 1974). It is with these principles of North Carolina law that the court interprets the policy provision at issue.

The North Carolina Supreme Court has distinguished the three common types of jurisdictional contract provisions, dividing them into three categories: choice-of-law provisions, consent-to-jurisdiction provisions, and forum-selection provisions.

> The first type, the choice of law provision, names a particular state and provides that the substantive laws of that jurisdiction will be used to determine the validity and construction of the contract, regardless of any conflicts between the laws of the named state and the state in which the case is litigated. The second type, the consent to jurisdiction provision, concerns the submission of a party or parties to a named court or state for the exercise of personal jurisdiction over the party or parties consenting thereto. By consenting to the jurisdiction of a particular court or state, the contracting

> party authorizes that court or state to act against him. A third type, a true forum selection provision, goes one step further than a consent to jurisdiction provision. A forum selection provision designates a particular state or court as the jurisdiction in which the parties will litigate disputes arising out of the contract and their contractual relationship.

Johnston Cty. v. R.N. Rouse & Co., 414 S.E.2d 30, 33 (N.C. 1992).

The Ironshore Policy provision at issue states in relevant part:

> **24. Service of Suit:**
>
> It is agreed that in the event of the failure of this Company hereon to pay any amount claimed to be due hereunder, <u>this Company hereon, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction with the United States of America and will comply with all requirements necessary to give such Court jurisdiction</u> and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

ECF No. 1-1 at 8 (emphasis added). Parsing through the substantiveless legalese and disorienting sentence structure, the only reasonable interpretation of the "service of suit" provision is that it is a consent-to-jurisdiction provision. Several concepts of basic legal doctrine and logic compel this conclusion.

First, the law. Subject matter jurisdiction is the court's authority to hear certain types of cases; it is derived from the Constitution and certain acts of Congress. It either exists or it doesn't—parties are powerless to waive or grant subject matter jurisdiction. A contract provision granting a court subject matter jurisdiction over a dispute would be meaningless. The Constitution and Congress are the sole voices of authority on the matter. Personal jurisdiction, on the other hand, is just that—personal. It is the only type of jurisdiction that may be waived. A contract provision that purports to "submit to the jurisdiction of any court of competent jurisdiction" would be rendered meaningless if it referred to a party's willingness to submit to the court's subject matter jurisdiction.

6

Therefore, the only reasonable interpretation of a party's obligation to "submit to the jurisdiction of any court" is that it obligates the party to consent to the court of the plaintiff's choosing, meaning that the party consents to that court's exercise of personal jurisdiction over it.

Furthermore, the service-of-suit provision states that Ironshore "will comply with all requirements necessary to give such Court jurisdiction . . . ." Again, the only action a party can take that would give a court jurisdiction is to waive personal jurisdiction by consenting to suit in that court. Ironshore's argument that the service-of-suit provision does not waive personal jurisdiction would render the provision meaningless. The court cannot turn a blind eye to the clear meaning of language in an insurance policy. See Woods v. Nationwide Mut. Ins. Co., 246 S.E.2d 773, 777 (N.C. 1978) (finding that "every word and every provision [of an insurance policy] is to be given effect"). Therefore, read through the lens of basic civil procedure and logic, the provision can only have one meaning—that Ironshore has consented to suit in this district for matters arising out of the Ironshore Policy, and thus has waived its right to contest personal jurisdiction in this matter.

Indeed, North Carolina courts would agree. "The term 'jurisdiction' in a consent to jurisdiction clause always and necessarily describes personal jurisdiction. This is because personal jurisdiction is the only type of jurisdiction to which the parties may consent; the court's subject matter jurisdiction, in contrast, cannot be waived." Gary L. Davis, CPA, P.A., v. Hall, 733 S.E.2d 878, 880 (N.C. Ct. App. 2012). Thus, North Carolina contract law requires that the court to find that Ironshore has consented to the forum of C3NC's choosing through the service-of-suit provision in the Ironshore Policy.

Having interpreted the service-of-suit provision as a consent-to-jurisdiction provision, the court turns to federal law to determine if the provision constitutes a valid waiver of Ironshore's constitutionally derived right to contest personal jurisdiction. The Supreme Court has noted that, "because the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 n. 14 (1985) (quotation marks omitted). Where a party consents to personal jurisdiction as part of a "freely negotiated" agreement, the enforcement of that agreement "does not offend due process." Id.

Considering clauses identical or nearly identical to the service of suit provision in this case, at least three circuit courts have recognized that an insurer's inclusion of a service-of-suit provision submits the insurer to the forum in which the insured files suit. See Suter v. Munich Reinsurance Co., 223 F.3d 150, 160 (3d Cir. 2000); McDermott Int'l, Inc. v. Lloyds Underwriters of London, 944 F.2d 1199, 1206 (5th Cir. 1991); In re Delta Am. Re Ins. Co., 900 F.2d 890, 894 (6th Cir. 1990).

Most courts that have enforced service-of-suit provisions have done so in the context of removal, finding that an insurer waives its right to remove a matter to federal court where the relevant policy includes of service-of-suit provision and the insured brought suit in state court. See City of Rose City v. Nutmeg Ins. Co., 931 F.2d 13, 15 (5th Cir. 1991) ("On its face the endorsement is unambiguous. It plainly requires that the insurer submit to the jurisdiction of any court of the policyholder's choosing."); Sevigny v. British Aviation Ins. Co., 2015 WL 3755204, at *5 (D.N.H. June 16, 2015) ("Because the service of suit clause in the defendants' policy waived the defendants' right to remove

the case from the New Hampshire state court where it was initiated, the case must be remanded to that court."); Garcia v. Century Sur. Co., 2015 WL 1598069, at *2 (D. Colo. Apr. 7, 2015) ("[the service of suit provision's] language is clear and unequivocal, and it waives [the insurer's] right to choose the forum for litigating disputes with its insureds."); Elevation Builders, Inc. v. Companion Specialty Insurance Company, 2015 WL 4159426, at *3 (D. Colo. July 8, 2015) ("[T]he "service of suit endorsement" gives plaintiff the unilateral right to select the forum."); Welborn v. Classic Syndicate, Inc., 807 F. Supp. 388, 391 (W.D.N.C. 1992) (finding that a service of suit provision submitted insurer to the court of insured's choosing). In each case, the court held that the insurer waived its right to remove because the service-of-suit clause indicated the insurer's clear intent to submit to the jurisdiction of the court of the insured's choosing. In short, courts have generally treated consent-to-jurisdiction provisions as binding the insurer to the forum selected by the insured. The same principle that guided those courts to conclude that those insurers waived their right to remove leads this court to find that the Ironshore waived its right to contest personal jurisdiction.

**B. Venue**

By the same token, Ironshore has consented to the venue selected by C3NC. The overwhelming weight of authority holds that a consent-to-jurisdiction provision precludes an insurer from objecting to the forum on the basis of personal jurisdiction or removing the case from state court to federal court. In short, once the plaintiff has brought suit in a forum, courts treat the consent-to-jurisdiction provision akin to a mandatory forum-selection clause with the forum in which the insured filed suit as the selected, mandatory forum. See, e.g., Welborn, 807 F. Supp. at 389–90 (W.D.N.C. 1992) ("Plaintiffs contend

that this language acts as a forum selection clause, allowing the insured to select the court in which any dispute concerning the policy is to be litigated . . . this Court [agrees and] finds that the service of suit clause in the insurance contract waived the defendants' right to remove . . . .").

While the ultimate determination of whether a transfer of venue is warranted is "committed to the discretion of the district court[,]" In re Ralston Purina Co., 726 F.2d 1002, 1005 (4th Cir. 1984), the Supreme Court has noted that "[t]he presence of a forum-selection clause . . . will be a significant factor that figures centrally in the district court's calculus." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). Based on federal treatment of consent-to-jurisdiction provisions as akin to forum-selection clauses, the court feels compelled to honor "the parties' private expression of their venue preferences." Id.; see also Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 444 (4th Cir. 2015) ("As a general rule, a plaintiff's choice of venue is entitled to substantial weight in determining whether transfer is appropriate."). Therefore, the court declines to transfer this matter to another venue.

To be sure, the court understands that South Carolina is an inconvenient forum. The property at issue and probable witnesses are located in North Carolina. In Johnson City, the North Carolina Supreme Court noted that jurisdictional provisions in insurance policies often perplex courts because that are often strewn together from different sources of "boilerplate language." 414 S.E.2d at 33. The court imagines this dispute arises from a similar issue. Nevertheless, boilerplate language in a contract is not benign, and the court is required to give every provision in a contract legal effect. Therefore, Ironshore must be held to account for the plain language it included in its insurance policy, no matter

how arbitrarily that language might have been placed there.  An insurer may not escape the plain meaning of the language it included in its policy with an insured.  Based on the plain language included in the Ironshore Policy, the court finds that Ironshore intended to submit to the jurisdiction of any court of the insured's choosing.  As such, a transfer to another venue is inappropriate.

Nevertheless, in support of its motion to transfer venue, Ironshore argues that it retained the right to transfer venue in a different service-of-suit provision of the Ironshore Policy.  That provision states,

> In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States.  Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.

ECF No. 1-1 at 2.  In other words, Ironshore argues that this service-of-suit provision in the policy, which contains language reserving Ironshore's right to seek a transfer of venue, should be given determinative effect over the other service of suit provision, which contains no such language.

Of course, it is a basic proposition of insurance law that inconsistencies in a policy are construed strictly against the insurer and in favor of the insured.  State Capital Ins. Co. v. Nationwide Mut. Ins. Co., 350 S.E.2d 66, 73 (N.C. 1986) ("It is well settled in North Carolina that insurance policies are construed strictly against insurance companies and in favor of the insured.").  Here, there are two service-of-suit provisions.  One, on which C3NC relies, contains no reservation of Ironshore's right to seek a transfer of

11

venue. The other, on which Ironshore relies, specifically reserves Ironshore's right to seek a transfer of venue. As an initial matter, the court is unconvinced that the service-of-suit provision on which Ironshore relies effectively reserves the right to transfer venue. However, even assuming that it does, the service-of-suit provisions, at best, create a clear conflict, and the court is required to resolve such insurance policy conflicts in favor of the insured. Therefore, the court finds that Ironshore consented to the venue in which C3NC filed suit, which is this case is the district of South Carolina, Charleston division.

## IV. CONCLUSION

For the foregoing reasons the court **DENIES** Ironshore's motion.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**February 12, 2020
Charleston, South Carolina**